Edwin F. GORDON, Plaintiff-Appellant,
Cross-Appellee,

v.

E. G. GREEN et al.,
Defendants-Appellees,

Gustave T. Broberg, Jr., Defendant-Appellee, Cross-Appellant.

No. 77–1188.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1979.

Rehearing Granted in Part and
Denied in Part Nov. 19, 1979.

Di Giulian, Spellacy & Bernstein, Sidney T. Bernstein, Fort Lauderdale, Fla., W. E. Quisenberry, for appellant Gordon.

Fowler, White, Burnett, Hurley, Banick & Knight, Michael J. Cappucio, Miami, Fla., for appellee Barley.

Lowndes, Peirsol, Drosdick & Doster, Ernest J. Rice, James M. Spoonhour, Orlando, Fla., for appellees Overstreets.

Bedell, Bedell, Dittmar & Zehmer, Chester Bedell, Peter D. Webster, Jacksonville, Fla., for appellee-cross-appellant Gustave T. Broberg, Jr.

Fowler, White, Gillen, Boggs, Villareal & Banker, Wm. A. Gillen, Tampa, Fla., for appellee-cross-appellant Broberg.

Jones, Paine & Foster, Sidney A. Stubbs, Jr., Margaret L. Cooper, West Palm Beach, Fla., for appellee E. G. Green.

Smathers & Thompson, Earl D. Waldin, Jr., Miami, Fla., for appellees Heftler, Rhoades, Heye, Sherrill, Coleman, William & Henry Rudkin and Samuel & Dudley Sutphin.

Barwick, Bentley, Hayes & Karesh, M. Cook Barwick, Julian D. Halliburton, Atlanta, Ga., for appellant Gordon.

Robert W. Hayes, Gary L. Seacrest, Atlanta, Ga., for appellant Gordon.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

JOHN R. BROWN, Chief Judge:

As we see it, the only issue currently before the Court in these five consolidated cases [1] is whether verbose, confusing, scan-

1. The captioned case is consolidated with No. 77–1184, *Edwin F. Gordon v. George A. Terry,*

*Sr., et al., Gustave T. Broberg, Jr.;* No. 77–1185, *Edwin F. Gordon v. M.M. Overstreet et*

dalous, and repetitious pleadings totaling into the thousands of pages comply with the requirement of "a short and plain statement" set forth in F.R.Civ.P. 8. We think that the mere description of the issue provides the answer:[2] we direct the District Court to dismiss the complaints—with leave to amend—because of appellant's failure to comply with F.R.Civ.P. 8(a) and (e).

### The Pleadings: Gobbledygook

The appellant, Edwin F. Gordon, invested several million dollars in a series of Florida real estate syndications. When the promises of substantial profits failed to materialize, appellant filed suit against the sellers and promoters of the syndications, claiming various violations of the federal securities laws.[3]

Under F.R.Civ.P. 8, a party seeking relief must submit a pleading containing "a short and plain statement of the grounds upon which the court's jurisdiction depends," F.R. Civ.P. 8(a)(1), and "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2). In addition, F.R.Civ.P. 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct." As the following factual account demonstrates, nothing was further from the minds of appellant and his lawyer than the clear directions contained in F.R.Civ.P. 8(a) and (e).

These five consolidated cases were originally brought in the Southern District of New York in March and April of 1976. At this initial stage, appellant filed five separate long, verbose, and confusing verified complaints containing a total of 165 type-written pages and an additional 413 pages of exhibits. In one of the five cases, appellant filed an amendment to the verified complaint (8 pages plus 39 pages of exhibits).

By stipulation, the cases were transferred to the Southern District of Florida. The Florida Court proposed to dismiss appellant's complaints for violation of Rule 8, but did not actually do so when appellant introduced a single complaint and filed a motion to consolidate. The motion to consolidate was eventually denied.

In September 1976, the Trial Court ordered a hearing on various motions, primarily motions to dismiss under Rule 12(b). One week prior to the hearing—and without seeking leave to amend—appellant filed an "Amendment to Verified Complaint" for each of the actions. Each "Amendment to Verified Complaint" was 19 pages. On September 30, 1976, the Trial Court dismissed the action, but *not* for failure to comply with Rule 8. Rather, after combing through the mountain of pages before him, the Trial Judge concluded that appellant failed to establish federal court jurisdiction.[4] Subsequently, appellant topped his mountain of legal papers with a fourth set of complaints and a motion for leave to amend. The motion was summarily denied.

### "Let Thy Speech Be Short, Comprehending Much In Few Words"[5]

■ The various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers are anything but short, totaling over 4,000 pages, occupying 18 volumes, and re-

---

al., Gustave T. Broberg, Jr.; No. 77–1186, *Edwin F. Gordon v. William Hersey Hamm, III, et al.*, Gustave T. Broberg, Jr.; and No. 77–1187, *Edwin F. Gordon v. Hobe Properties, Inc., et al.*, Gustave T. Broberg, Jr.

**2.** The Trial Judge apparently did not, since he struggled and strained to decipher plaintiff's mountain of papers, ultimately holding that the Court lacked jurisdiction.

**3.** The Securities Act of 1933, 15 U.S.C.A. §§ 77a *et seq.;* the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78a *et seq.;* the Investment Advisors Act of 1930, 15 U.S.C.A.

§§ 80a–1 *et seq.;* and the rules and regulations of the Securities and Exchange Commission, 17 C.F.R. Part 200 *et seq.*

**4.** The Trial Court found that the real estate syndications were not "securities." To arise under the securities acts, a case must involve a security. See, e.g., *Int'l Bd. of Teamsters v. Daniel,* 1979, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808; *Reid v. Hughes,* 5 Cir., 1978, 578 F.2d 634, 637.

**5.** Ecclesiasticus 32:8.

quiring a hand truck or cart to move.[6] They are not plain, either. The Trial Court described the pleadings as being "extremely long and combin[ing] into single counts detailed recitation of evidence and legal arguments complete with extensive citations of authority." The Court also observed that a paragraph from one typical complaint was single spaced, "extend[ed] the full length of a legal page and constitute[d] a single sentence." Much of the pleadings are scandalous as well.[7] Moreover, we cannot tell whether complaints filed earlier in time are to be read in conjunction with those filed later or whether the amended versions supersede previous pleadings.[8]

One option before us is to struggle through the thousands of pages of pleadings in an effort to determine (assuming we possibly could) whether the Trial Court correctly dismissed for lack of jurisdiction. However, such a course of action would be unwise from the standpoint of sound judicial administration. All would know that there is no longer any necessity for paying the least bit of heed to F.R.Civ.P. 8(a) in its demand for "a short and plain statement" reiterated by the 8(e) requirement that each averment "be simple, concise, and direct." Lawyers would see that in the face of even gross violations of Rule 8, we would undertake the burden of trying to parse out 18 volumes of words, disorganized and sometimes conflicting, with a mish-mash of so-called evidentiary materials, citations of authority, and other things that a pleader, aware of and faithful to the command of the Federal Rules of Civil Procedure, knows to be completely extraneous. And the District Courts who come on the firing line are the first victims of this paper mill. We think that the Trial Court should have dismissed the complaints with leave to amend. While a Trial Court is and should be given great leeway in determining whether a party has complied with Rule 8, we think that as a matter of law, verbose and scandalous pleadings of over 4,000 pages violate Rule 8.

In finding a violation of Rule 8, we do not recede even one inch from the position ex-

6. Appellant's filings demonstrate once and for all that history does in fact repeat itself. In discussing Dr. J. H. Baker's second volume of *Spelman's Reports,* the 1978 Report of the Council and Abstract of the Accounts of the Selden Society reveals (p. 6): "It is in the 16th century that the sheer physical bulk of the [plea] rolls [became] truly daunting, with a mile or two of parchment used in a term." If every party filed the massive pleadings submitted here, we would only hasten the speed at which our country's trees are being transformed into sheets of legal jargon. Moreover, we would need to build another courthouse simply to store legal documents.

7. At the risk of further polluting the legal waters by immortalizing this gibberish in the annals of the Federal Reporter, we quote some typically scandalous language from one of appellant's many filings:

Green and Broberg worked closely together to keep their grandiose "Money making monster" scheme in operation . . . (3) by forcing the investors in various syndications to continue to make payments through the loyalty and enthusiasm of those investors who had compromised themselves to the scheme by making money by means of the Green-Broberg scheme, . . . Broberg aided and abetted Green in actively working to police compliance with the "pay or you are out of the deal completely" enforcement con-

cept in this scheme that can only be described as diabolical and monstrous, by Broberg's legal advice that the forfeiture clause was legal (thus Broberg bears an awesome burden towards the investors because of his special fiduciary responsibilities as an Attorney at Law), (4) by not only failing to register this securities investment scheme to bring it under the supervision and censure of the S.E.C. but to openly operate in what was, in fact, an outlaw fashion, based on the spurious so-called "legal opinion" of Attorney Broberg, rendered to investors and potential investors, to the effect that this scheme did *not* constitute securities but that, on the contrary, it was simple country-style real estate with lots of country-style profit in it for all collaborators, but destruction for the defector who will be cannibalized by the rest of the group, again based on the so-called "legal opinion" of Broberg to the effect that failure to make payments for whatever reason constitutes a breach of the so-called "trust agreement" and subjects the defector to losing his entire interest and having it assumed (cannibalized) by the remaining investors. . . .

8. The various amendments do not adopt by reference any allegations of the previous complaints. Yet the District Court examined all but the fourth set of complaints in deciding to dismiss for lack of jurisdiction.

pressed by this Court in *Blue Cat*,[9] *Plimsoll Club*,[10] and a host of other cases [11] sounding an approach of liberality under F.R.Civ.P. 12 in reading a pleading as an adequate statement or claim. Appellant asks not that we adopt a liberal approach, but that we stand liberality on its head by accepting 4,000 pages of chaotic legal jargon in lieu of a short and plain statement. We would be hindering, not promoting, the underlying purpose of Rule 8, which is "to *eliminate* prolixity in pleading and to achieve brevity, simplicity, and clarity." *Knox v. First Security Bank of Utah*, 10 Cir., 1952, 196 F.2d 112, 117 (emphasis added). We fully agree with the observation of the District Court for the Eastern District of Michigan that "the law does not require, nor does justice demand, that a judge must grope through [thousands of] pages of irrational, prolix and redundant pleadings." *Passic v. State*, E.D.Mich., 1951, 98 F.Supp. 1015, 1016.

Our view—that flagrant violations of Rule 8 should not be tolerated—is shared by Courts throughout the country. There are numerous cases in which complaints have been dismissed as being contrary to the letter and spirit of the Rule. In *Carrigan v. California State Legislature*, 9 Cir., 1959, 263 F.2d 560, *cert. denied*, 1959, 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929, the Ninth Circuit upheld the Trial Court's dismissal without prejudice of a complaint totaling 186 pages, filled with hearsay statements, medical reports, and other extraneous material. In *Brown v. Knoxville News-Sentinel*, E.D.Tenn., 1966, 41 F.R.D. 283, the District Court for the Eastern District of Tennessee dismissed without prejudice a complaint of 117 pages, indicating that "the Court is unable to separate the various charges." For other interesting cases, see, e.g., *Silver v. Queen's Hospital*, D.Hawaii, 1971, 53 F.R.D. 223 (ordering plaintiff to file new complaint, describing existing one as "voluminous" and containing "clearly extraneous allegations"); *Johnson v. Hunger*, S.D.N.Y., 1967, 266 F.Supp. 590 (dismissing plaintiff's complaint without prejudice and describing complaint as "a confusing and foggy mixture of evidentiary statements, arguments and conclusory matters"); *Benner v. Philadelphia Musical Society, Local 77, of the American Federation of Musicians*, E.D.Penn., 1963, 32 F.R.D. 197 (dismissing without prejudice 26 page complaint filled with "prolix, argumentative and conclusionary paragraphs"); *Martin v. Hunt*, D.Mass., 1961, 29 F.R.D. 14 (dismissing complaint with 57 paragraphs containing "scandalous and vituperative" material).

As previously stated, in ordering the suits dismissed we do so with leave to amend. Appellant may file a *short and*

**9.** *Barber v. M/V "Blue Cat"*, 5 Cir., 1967, 372 F.2d 626, 1967 A.M.C. 1926.

**10.** *Cook & Nichol, Inc. v. The Plimsoll Club*, 5 Cir., 1971, 451 F.2d 505.

**11.** See, e.g., *Hitt v. City of Pasadena*, 5 Cir., 1977, 561 F.2d 606; *Mann v. Adams Realty Co., Inc.*, 5 Cir., 1977, 556 F.2d 288; *Quinonez v. Nat'l Assoc. of Securities Dealers, Inc.*, 5 Cir., 1976, 540 F.2d 824; *Roebuck v. Florida Dept. of Health and Rehabilitative Services, Inc.*, 5 Cir., 1974, 502 F.2d 1105; *Brinkley & West, Inc. v. Foremost Ins. Co.*, 5 Cir., 1974, 499 F.2d 928; *Singleton v. Foreman*, 5 Cir., 1970, 435 F.2d 962; *Herpich v. Wallace*, 5 Cir., 1970, 430 F.2d 792; *Pred v. Board of Public Instruction of Dade County, Fla.*, 5 Cir., 1969, 415 F.2d 851; *Equity Capital Co. v. Sponder*, 5 Cir., 1969, 414 F.2d 317; *Stern, Hays & Lange, Inc. v. M/V Nili*, 5 Cir., 1969, 407 F.2d 549, 1969 A.M.C. 13; *Banco Continental v. Curtiss Nat'l Bank of Miami Springs*, 5 Cir., 1969, 406 F.2d 510; *Jones Garden Apartments, Inc. v. Suleski*, 5 Cir., 1968, 391 F.2d 172; *Robertson v. Johnston*, 5 Cir., 1967, 376 F.2d 43; *Continental Motors Corp. v. Continental Aviation Corp.*, 5 Cir., 1967, 375 F.2d 857; *Molnar v. Gulfcoast Transit Co.*, 5 Cir., 1967, 371 F.2d 639; *Tyler v. Peel Corp.*, 5 Cir., 1967, 371 F.2d 788; *Carmack v. Gibson*, 5 Cir., 1966, 363 F.2d 862; *Shull v. Pilot Life Ins. Co.*, 5 Cir., 1963, 313 F.2d 445; *Arthur H. Richland Co. v. Harper*, 5 Cir., 1962, 302 F.2d 324; *Lawhorn v. Atlantic Refining Co.*, 5 Cir., 1962, 299 F.2d 353; *Smoot v. State Farm Mutual Auto Ins. Co.*, 5 Cir., 1962, 299 F.2d 525; *Travelers Ins. Co. v. Busy Electric Co.*, 5 Cir., 1961, 294 F.2d 139; *Mitchell v. E–Z Way Towers, Inc.*, 5 Cir., 1959, 269 F.2d 126; *Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc.*, 5 Cir., 1958, 257 F.2d 162; *Carss v. Outboard Marine Corp.*, 5 Cir., 1958, 252 F.2d 690, 1958 A.M.C. 638; *Baldwin v. Morgan*, 5 Cir., 1958, 251 F.2d 780; *Millet v. Godchaux Sugars, Inc.*, 5 Cir., 1957, 241 F.2d 264; *Fair v. United States*, 5 Cir., 1956, 234 F.2d 288.

*plain* statement in lieu of the 18 volumes of papers currently before us. We hold that under F.R.Civ.P. 15(c), the filing of a proper, decent, acceptable amendment will relate back to the original filing, thus eliminating any question concerning the statute of limitations. See, e. g., *Travelers Ins. Co. v. Brown,* 5 Cir., 1964, 338 F.2d 229 (applying the "relation back" doctrine). We explicitly declare our "relation back" ruling to be the "law of the case," binding in all subsequent proceedings in both the district and appellate courts with respect to these consolidated cases.[12]

If our holding results in more time and expense to appellant, that would be fair recompense for these marked, unjustifiable violations of the letter and spirit of the Federal Rules of Civil Procedure and an indifference as though they had never been adopted 41 years ago.[13]

We vacate the judgment of the District Court and remand for dismissal of the complaint without prejudice to the right promptly to file a complaint in compliance with Rule 8.[14]

VACATED and REMANDED.

---

**12.** In discussing the doctrine of "law of the case," we have observed that:

> [t]he "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that . . . it would be impossible for an appellate court to perform its duties satisfactorily and efficiently and expeditiously if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal thereof.

*Carpa, Inc. v. Ward Foods, Inc.,* 5 Cir., 1978, 567 F.2d 1316, 1319–20, quoting *White v. Murtha,* 5 Cir., 1967, 377 F.2d 428, 431. See also *Lincoln National Life Ins. Co. v. Roosth,* 5 Cir., 1962, 306 F.2d 110, 113, *cert. denied,* 1973, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720.

**13.** Counsel as scrivener would have been fair game for the discipline meted out by the Chancellor in 1596. As Professor Richard C. Wydick of Davis Law School reports:

> In 1596 an English chancellor decided to make an example of a particularly prolix doc-

ument filed in his court. The chancellor first ordered a hole cut through the center of the document, all 120 pages of it. Then he ordered that the person who wrote it should have his head stuffed through the hole, and the unfortunate fellow was led around to be exhibited to all those attending court at West Minister Hall.

Wydick, Plain English For Lawyers, 1978, 66 Calif.L.Rev. 727.

Obviously this applies only to counsel who filed the papers, not to the appellate counsel who briefed and argued the case here.

**14.** Of course, if appellant does not file within a reasonable time (to be set by the District Court) a complaint which complies with Rule 8, the District Judge may dismiss the complaint with prejudice for violation of that rule.

We also point out that we express no view on the merits of the jurisdictional claim—nor could we, without comprehensible pleadings. If appellant files a complaint acceptable for purposes of Rule 8, defendants may again raise the jurisdictional issue in the District Court.