684 F.2d 736
 Fed. Sec. L. Rep. P 98,787
Edwin F. GORDON, Plaintiff-Appellant,
v.
George A. TERRY, Sr., et al., Defendants-Appellees.
Edwin F. GORDON, Plaintiff-Appellant,
v.
M. M. OVERSTREET, et al., Defendants-Appellees.
Edwin F. GORDON, Plaintiff-Appellant,
v.
E. G. GREEN, et al., Defendants-Appellees.
Edwin F. GORDON, Plaintiff-Appellant,
v.
HOBE PROPERTIES, INC., et al., Defendants-Appellees.
Edwin F. GORDON, Plaintiff-Appellant,
v.
William Hershey HAMM, III, et al., Defendants-Appellees.
 Nos. 80-5797 to 80-5801.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 30, 1982.
 
 Julian D. Halliburton, Daniel L. MacIntyre, Atlanta, Ga., John W. Stokes, Decatur, Ga., for plaintiff-appellant.
 Baker & Hostetler, G. Thomas Ball, Orlando, Fla., for G. A. Terry, Sr., Mary Terry, Netsy B. Terry and George Terry, Jr.
 Bush, Ross, Gardner, Warren & Rudy, John F. Rudy, Tampa, Fla., for First Nat. Bank in Palm Beach.
 Peter D. Webster, Jacksonville, Fla., William A. Gillen, John McQuigg, Tampa, Fla., for Gustave T. Broberg, Jr.
 Paul B. Erickson, Michael J. Pucillo, Palm Beach, Fla., for T. R. Anderson and Robert D. Lacey.
 Jones & Foster, P. A., Sidney A. Stubbs, Jr., West Palm Beach, Fla., for E. G. Green and Heminway Co.
 Smathers & Thompson, Earl D. Waldin, Jr., Miami, Fla., for Alice M. Rhoades, Harold H. Heye, Pierre V. Heftler, Virgil Sherrill, Samuel R. Sutphin, William L. Rudkin, George Coleman, Henry A. Rudkin, Jr., and Dudley V. Sutphin.
 R. Lee Bennett, Orlando, Fla., for Estate of M. M. Overstreet, Jeanette Overstreet, Jennings L. Overstreet and Joann Overstreet.
 Appeals from the United States District Court for the Southern District of Florida.
 Before FAY, VANCE and ARNOLD*, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 Plaintiff Edwin F. Gordon allegedly invested approximately four million dollars in five real estate syndications. He is seeking rescission and damages under various sections of the federal securities acts. The District Court found as a matter of law that Gordon had not purchased "securities interests" and granted summary judgment in favor of the defendants. This appeal followed. We reverse summary judgment as to Green and affirm as to the remaining defendants.
 
 I. Procedural History
 
 2
 This is the second time these consolidated cases have been presented on appeal. The first appeal was from a dismissal for lack of jurisdiction under Rule 12(b), Federal Rules of Civil Procedure. In view of the state of the pleadings which were described as "verbose, confusing, scandalous, and repetitious,"[1] the panel declined to reach the merits, finding instead that the pleadings were not "short and plain" and did not satisfy the requirements of Rule 8, Federal Rules of Civil Procedure. The District Court's judgment was vacated and the case was remanded for dismissal of the complaints "without prejudice to the right to promptly file a complaint in compliance with Rule 8." Gordon v. Green, 602 F.2d 743, 747 (5th Cir. 1979) (footnote omitted).
 
 
 3
 On remand, the first set of amended complaints were dismissed by the District Court on Rule 8 grounds. The plaintiff then filed second amended complaints and third amended complaints. The District Court ruled that the third amended complaints satisfied Rule 8. The third amended complaints allege that the defendants violated various provisions of the federal securities laws[2] and also set forth several state law claims.
 
 
 4
 On the basis of the allegations, plaintiff's affidavits, and the written agreements representing each real estate syndication, the defendants moved for summary judgment. The day before the District Court's scheduled summary judgment hearing, the plaintiff submitted a set of fourth amended complaints. Those amendments allege violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961 et seq. (1976). Following the hearing, the District Court ruled that federal jurisdiction was lacking and entered an order granting summary judgment in favor of the defendants. Leave to amend the complaints to allege RICO violations was denied and the pendent state claims were dismissed.
 
 
 5
 Two issues are presented on appeal: whether the denial of leave to amend the complaints was an abuse of discretion and whether the real estate syndications are securities.
 
 II. The RICO Amendments
 
 6
 Amendments to pleadings are governed by Rule 15(a), Federal Rules of Civil Procedure. Under the rule, a plaintiff may amend once, without leave of court, before responsive pleadings are served. Any subsequent pleadings must be with leave of the court, but leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).
 
 
 7
 Plaintiff Gordon originally filed suit in April, 1976. Since the original filing, the plaintiff has filed numerous complaints and amended complaints. At no time, prior to his last attempt to amend the complaints, did the plaintiff assert a cause of action based on RICO. The plaintiff had ample opportunity to assert these claims, yet he waited until the day before the District Court's summary judgment hearing to do so. Counsel for the plaintiff suggested in his memorandum to the trial court that the reason for filing the fourth amended complaints was to avoid decision on the securities issue.
 
 
 8
 We conclude that the plaintiff unreasonably and unduly delayed in seeking amendment, exhibited bad faith, dilatory motives and has repeatedly failed to cure deficiencies in his pleadings despite numerous opportunities. Allowing amendment at this late date would be prejudicial to the defendants and would not serve the ends of justice. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The trial court's denial of leave to amend was not an abuse of discretion. We affirm.
 
 
 9
 III. A Securities Interest?
 
 A. The Real Estate Syndications
 
 10
 We stress at the outset of our analysis, the procedural posture of this case. In reviewing a grant of summary judgment, our inquiry must be whether the undisputed facts, considered in the light most favorable to the opposing party, establish that the moving party is entitled to judgment as a matter of law. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); American Telephone & Telegraph Co. v. Delta Communications Corporation, 590 F.2d 100, 101-02 (5th Cir.), cert. denied, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). Those facts, gleaned from the pleadings, documents, and affidavits filed in this case, are as follows.
 
 
 11
 Gordon first met E. G. Green, in October, 1970. Defendant Green told Gordon that he was putting together several real estate syndicates which would be highly profitable to investors. Green explained that because of his contacts, his unique expertise and his experience with the central Florida real estate market, he was able to purchase large tracts of undeveloped land at bargain prices and to resell the land within two years for substantial profits to a pool of developers. Green explained that the First National Bank of Palm Beach (the Bank) would act as trustee, that attorney Gustave Broberg would prepare the trust documents, and that Broberg and the Bank would assist in the management and resale of the properties. As a result of those representations, Gordon was persuaded to invest in five real estate syndications. Four of the syndications were governed by trust agreements and the fifth was governed by a limited partnership agreement.
 
 
 12
 Under the trust agreements, a tract of land is held in the trustee's name (the Bank) and each beneficiary's interest is proportionate to the amount contributed by the beneficiary. The agreements indicate that their purpose is to simplify later resale of the property and disposition of the property is controlled by majority vote of the beneficiaries. Under the limited partnership agreement, George Barley, Jr., is designated general partner and Gordon is listed as one of the limited partners. The agreement indicates that its purpose is investment in real property. Disposition of the property is controlled by majority consent of the partners.
 
 
 13
 All five agreements give the investors substantial control over the property. Gordon, however, claims that he did not read the agreements and did not know their terms when he made his initial investments. Gordon states that Green made it a condition of investment that none of the investors meet each other, that they were to deal only with Green, Broberg, and the Bank, and that they place absolute faith in Green.
 
 B. Williamson v. Tucker
 
 14
 Gordon argues that when he invested in the real estate syndications he entered into investment contracts and thus "securities" under the federal securities laws.[3] SEC v. W. J. Howey Co. defines an investment contract as "a contract, transaction or scheme whereby a person (1) invests his money (2) in a common enterprise and (3) is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1102-1103, 90 L.Ed. 1244 (1946). The District Court determined that Howey's third element was not satisfied because under the written agreements the investors, by majority vote, retained control over all decisions which would affect the success of the ventures.[4] On appeal, Gordon argues that Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), decided after the District Court entered its order, requires our reversal.
 
 
 15
 Under the third criteria of the Howey definition, the focus is on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party. See SEC v. Koscot Interplanetary, Inc., 497 F.2d 473, 483 (5th Cir. 1974); SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others. Thus, general partnerships and other arrangements which grant the investors control over the significant decisions of the enterprise are not securities. See, e.g., Schultz v. Dain Corporation, 568 F.2d 612 (8th Cir. 1978); Ballard & Cordell Corporation v. Zoller & Danneberg Exploration, Ltd., 544 F.2d 1059 (10th Cir. 1976), cert. denied, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977); Vincent v. Moench, 473 F.2d 430 (10th Cir. 1973); Hirsch v. duPont, 396 F.Supp. 1214 (S.D.N.Y.1975), aff'd, 553 F.2d 750 (2d Cir. 1977); Oxford Finance Cos. v. Harvey, 385 F.Supp. 431 (E.D.Pa.1974); cf. Cameron v. Outdoor Resorts of America, Inc., 608 F.2d 187 (5th Cir. 1979), modified on other grounds, 611 F.2d 105 (5th Cir. 1980) (promoter retained right to manage property). The written agreements in this case place control over all significant decisions in the hands of the investors and would seem to mandate the conclusion reached by the District Court.[5] Williamson v. Tucker, however, articulates a narrow exception to the general rule.
 
 
 16
 The investors in that case were participants in joint ventures in real estate. The written agreements provided that any decision regarding the properties could be made by vote of the holders of 60% or 70% interests in the ventures. The investors in each joint venture expected to either develop the property or sell it after it had appreciated in value and the promoter, Godwin Investments, represented that it would aggressively pursue those objectives.
 
 
 17
 By their terms, the agreements vested control in the joint venturers and the Fifth Circuit noted that there could be no security if "the power retained by the investors is a real one which they are in fact capable of exercising." Id. at 419. Proceeding from that point, the Court recognized that under certain circumstances an investor may be incapable of exercising a power given by a written agreement. If that were the case, the investor would be in a position of dependency. With no real means of protecting his investment, he would be forced to rely on others for his hoped for profits.
 
 
 18
 One situation envisioned by the Court was a dependency on another's specialized expertise.[6] In setting forth this exception, the Court carefully delineated the circumstances which would create the sort of dependency contemplated by investment contract analysis. The fact that the investor has delegated management duties or has chosen to rely on some other party does not establish dependency. The investor must have "no reasonable alternative to reliance on that person." Id. at 423. That is, the investor must be "forced to rely on some particular non-replaceable expertise." Id. As an example, the Court indicated that "investors may be induced to enter a real estate partnership on the promise that the partnership's manager has some unique understanding of the real estate market in the area in which the partnership is to invest." Id.
 
 
 19
 The panel emphasized that when agreements provide investors with substantial control, a plaintiff claiming forced reliance on another is faced with a difficult burden of proof. "Such an investor must demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers." Id. at 424 (footnote omitted). And, in order to survive a motion to dismiss or a motion for summary judgment, the plaintiff must allege at a minimum that the promoter "was uniquely capable of such tasks or that the (investors) were incapable, within reasonable limits, of finding a replacement manager." Id. at 425.
 
 
 20
 C. Gordon's Allegations-A Genuine Issue of Fact ?
 
 
 21
 Gordon argues that Williamson requires our reversal of the summary judgment order. And, indeed, where there exists a factual question as to Gordon's dependency we must reverse. But we begin with the written agreements. They undeniably give Gordon control through his voting powers over the fate of his investments. Such control precludes a finding of a security interest unless dependency in the narrow sense articulated by Williamson could be found to exist. In our opinion, dependency upon the skills of one or more defendants does not establish dependency upon all defendants. Williamson requires an examination of the representations and promises made by promoters or others to induce reliance upon their entrepreneurial abilities. Where representations or promises have not been made or where, if made, they do not involve claims of unique entrepreneurial or managerial abilities, the dependency required by Williamson cannot exist. We therefore examine Gordon's allegations and uncontroverted affidavits as they pertain to each defendant.
 
 
 22
 Green: Green, a central Florida real estate broker, promoted the land investment syndications. Gordon claims that he relied upon Green's skills and expertise, and that Green represented that he was an expert in selecting bargain-priced central Florida properties which could be resold to his pool of developers within two years at large profits; that "(t)he investors' property would be used ... to provide the financial basis for the developer he selected and thereby give (the) investors a resale price that involved part of the developer's profit"; that he could make such deals because of his contacts and his unique expertise; and that only he knew how to structure the deals.
 
 
 23
 Broberg, the Bank, and Barley: Attorney Broberg drafted the trust agreements and the Bank served as trustee for the four land trusts. Barley was named general partner in the partnership agreement. Gordon claims that Green represented that his team of money managers consisted of Broberg and the Bank; that Broberg and the Bank assured Gordon that Green was brilliant and that Gordon was fortunate to be an investor in the syndications; that Broberg and the Bank "claimed great abilities in managing other people's funds"; and that all three defendants represented that they would take care of the "managerial legal, and resale operation."
 
 
 24
 The Sellers:[7] The sellers owned property which was acquired by the five real estate syndications.[8] Green makes no claim that these defendants ever made any representations. His complaints and his affidavits assert only that the sellers "conspired" with Green and that Green was their "agent."
 
 
 25
 The "Inside" Investors:[9] These defendants were co-investors in certain of the real estate syndications. Again, no claim is made that these defendants ever represented anything to Gordon. Gordon alleges only that they "conspired" with Green and that Green was acting under their "control."
 
 
 26
 We believe that taking the allegations as supported by affidavits in the light most favorable to Gordon, they are sufficient to preclude summary judgment as to Green only. Gordon has set forth specific statements made by Green which, if proven, demonstrate that Green represented himself to have unique knowledge regarding the real estate market in central Florida and the contacts and expertise to structure highly profitable deals. Whether Green's represented skills created the dependency contemplated by Williamson is a question of fact which cannot be resolved on the present record. Gordon must be given an opportunity to prove his assertions.
 
 
 27
 In contrast, the allegations and claims against the other defendants are far from sufficient to raise a factual question.
 
 
 28
 Regarding the Bank, Broberg, and Barley, Gordon's assertions demonstrate that the Bank and Broberg had confidence in Green's expertise, that they assured Gordon his investments were in good hands, and that they claimed to be skilled in their respective occupations. Last, we are told that all three defendants agreed to manage the syndications. In order to establish a genuine factual dispute, affidavits must set forth facts which are relevant to a viable legal theory. Spectrum Financial Cos. v. Marconsult, Inc., 608 F.2d 377, 380 (9th Cir. 1979), cert. denied, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980); First National Bank Co. v. Insurance Co. of North America, 606 F.2d 760, 766 (7th Cir. 1979). The alleged statements and acts of these defendants simply do not raise an issue of dependency under Williamson's narrow exception. Gordon does not contend that the three defendants possessed unique knowledge or skills, nor does he set forth facts from which we could infer such expertise. Summary judgment as to the Bank, Broberg, and Barley is therefore affirmed.
 
 
 29
 Regarding the sellers and the co-investors, the record is, for all practical purposes, non-existent. The complaints and affidavits allege no specific facts or representations pertaining to these defendants. Bare assertions that the defendants "conspired," "controlled," or retained Green as their "agent" are insufficient to create an issue as to Gordon's dependency on these defendants or to demonstrate the sort of relationship between the defendants and Green which would create a question as to imputed knowledge or responsibility.[10] Conclusory allegations such as these, without specific supporting facts, have no probative value. SEC v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980); Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir. 1976); Benton-Volvo-Metaire, Inc. v. Volvo Southwest, Inc., 479 F.2d 135, 139 (5th Cir. 1973). Summary judgment as to the sellers and the co-investors is affirmed.[11]
 
 
 30
 Our opinion deals with a very narrow issue, jurisdiction under the federal securities laws. The protection provided by the securities acts is not limitless, not every fraudulent commercial transaction falls within their ambit. Marine Bank v. Weaver, --- U.S. ---- at ----, 102 S.Ct. 1220 at 1223, 71 L.Ed.2d 409 (1982) ("Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud."). The allegations and affidavits in this case are sufficient to raise an issue only as to Gordon's dependency on Green's skills. The plaintiff may have common law and statutory claims against the remaining defendants, but he does not have a securities claim. In selecting the federal securities acts as a means to obtain redress, Gordon has chosen a most difficult route. On remand he will be faced with the burden of proving that his dependency on Green rendered him incapable of exercising the powers the written agreements vested in him. His path would have been more direct and much simpler in a state court. Summary judgment is reversed as to defendant Green and affirmed as to the remaining defendants.
 
 
 31
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 32
 VANCE, Circuit Judge, concurring in part and dissenting in part:
 
 
 33
 I concur in the reversal as to defendant Green. I dissent with respect to defendants Broberg, Barley, Heminway Corporation and First National Bank in Palm Beach; and would reverse the summary judgment in favor of those defendants. I concur in the result of the affirmance as to all other defendants.
 
 
 
 *
 Honorable Richard S. Arnold, U. S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Gordon v. Green, 602 F.2d 743, 743-44 (5th Cir. 1979). The complaints were described thusly:
 The various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers are anything but short, totaling over 4,000 pages, occupying 18 volumes, and requiring a hand truck or cart to move. They are not plain, either. The Trial Court described the pleadings as being "extremely long and combin(ing) into single counts detailed recitation of evidence and legal arguments complete with extensive citations of authority." The Court also observed that a paragraph from one typical complaint was single spaced, "extend(ed) the full length of a legal page and constitute(d) a single sentence." Much of the pleadings are scandalous as well. Moreover, we cannot tell whether complaints filed earlier in time are to be read in conjunction with those filed later or whether the amended versions supersede previous pleadings.
 Id. at 744-45 (footnotes omitted).
 During the ensuing years, the complaints and affidavits filed by the plaintiff have improved. The District Court found plaintiff's third amended complaints to be adequate and we agree.
 
 
 [2]
 Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and Rule 10b-5, 17 C.F.R. § 240.10b-5; Sections 5 and 12(1) of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77l(1) (1976); and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976). The complaints also allege violations under Section 206 of the Investment Advisors Act, 15 U.S.C. § 80b-6 (1976). The Supreme Court, however, has held that no private cause of action for damages exists under § 206. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19-25 (1979). Whether a private cause of action may be implied under § 17(a) of the Securities Act of 1933 has not been resolved by the Supreme Court, the former Fifth Circuit, or this Circuit
 
 
 [3]
 An "investment contract" is one of the terms used by both the Securities Act of 1933 and the Securities Exchange Act of 1934 to define a "security". 15 U.S.C. §§ 77b(1), 78c(a)(10) (1976)
 
 
 [4]
 The District Court also ruled that profits from appreciation in land were not "profits" under Howey's criteria and that since appreciation was the source of profits, there could be no significant efforts of others directed to producing profits. We agree that investments in land solely for the purpose of profits from appreciation on resale cannot be securities. See I L. Loss, Securities Regulation 491-92 (1962). However, the promises and inducements held out to investors must be considered in determining whether or not a particular transaction is a security. SEC v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Grainger v. State Security Life Insurance Co., 547 F.2d 303 (5th Cir. 1977), cert. denied, 436 U.S. 932, 98 S.Ct. 2832, 56 L.Ed.2d 777 (1978). Gordon's affidavits claim that Green promised to locate bargain-basement priced land, to structure a leveraging scheme which would result in early and large profits, and to supply a pool of developers ready to snap at the deal. See infra Section IIIC. These allegations indicate that Gordon was promised greater profits than could be expected from simple appreciation in land values. They also indicate that Green promised significant efforts to make those profits happen. Thus, we agree with the District Court's analysis of the law, but we cannot agree with its application. The significant issue in this case is not the nature of the expected profits, or the quality or quantity of the promised efforts. The determinative issue is the very real control given the investors by the written agreements
 
 
 [5]
 One of the agreements in this case is termed a "limited partnership." Limited partnership interests are generally held to be securities interests because the limited partners have no voice in management decisions. See, e.g., SEC v. Murphy, 626 F.2d 633 (9th Cir. 1980); Murphey v. Hillwood Villa Assocs., 411 F.Supp. 287 (S.D.N.Y.1976); Kroungold v. Triester, 407 F.Supp. 414 (E.D.Pa.1975). Hirsch v. duPont, 396 F.Supp. 1214 (S.D.N.Y.1975), aff'd, 553 F.2d 750 (2d Cir. 1977). The agreement in this case, however, lacks the attributes of a limited partnership because it permits the partners to control, by majority vote, the general partner's decisions regarding partnership property
 
 
 [6]
 Two other examples were given:
 (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers ....
 645 F.2d at 424. The plaintiff relies on neither of these examples and we see nothing in the record to indicate that they would be applicable.
 
 
 [7]
 The Terrys, George Terry, Sr., Mary Terry, George Terry, Jr., and Netsy Terry; the Overstreets, Estate of M. M. Overstreet, Jeannette Overstreet, Jennings Overstreet, and Jo Ann Overstreet; the "Hovey Trust" defendants, Alice Rhoades, George Coleman, Dudley Sutphin, Harold Heye, Virgil Scherrill, Henry Rudkin, Samuel Sutphin, Pierre Heftler, and William Rudkin; Francis Buckley, representing Hobe Properties, Inc., Hobe Jupiter Properties, Inc., and Hobe Sound Estates, Inc.; and the Hamms, William Hamm and Edward Hamm. It appears from the record that George Terry, Jr., Netsy Terry, George Coleman, William Hamm, and Edward Hamm were never properly served. Those persons were therefore not before the District Court when it entered its summary judgment order and are not before this Court on appeal. Since they are not parties to the case, our ruling does not extend to them. Moreover, Gordon dismissed the Terrys with prejudice in April, 1976. Gordon claims that Gordon v. Green permits him to rename the Terrys as defendants in his third amended complaint. The Gordon panel held that "the filing of a proper, decent, acceptable amendment will relate back to the original filing." 602 F.2d at 747. If the Terrys could properly be named in the complaints Gordon would permit relation back. As it is, they were dismissed with prejudice and it appears that their inclusion is not proper. However, the District Court did not rule on this issue. In view of our holding, infra, we need not and do not address the issue of relation back as it applies to the Terrys
 
 
 [8]
 Apparently a two-tiered transaction was involved. The sellers sold the property to Heminway Corporation, which was substantially owned and controlled by Green. The Heminway Corporation in turn sold the property to the real estate syndications
 
 
 [9]
 T. R. Anderson, Robert D. Lacey, Pierre Heftler, and William Rudkin are named as "defendant inside investors."
 
 
 [10]
 We note that in conjunction with their motion for summary judgment, Anderson and Lacey submitted affidavits in which they denied having any connection, either as sellers or as co-investors, with the Magnolia Ranch real estate investment, Case No. 80-5797, the only case in which they were served. Gordon has not responded to their assertions
 
 
 [11]
 The District Court granted summary judgment as to all the defendants although some of the defendants never responded to the third amended complaints. In view of the tortured procedural history of this case, the full and fair summary judgment hearing afforded by the trial judge, and particularly in view of the fact that no party has raised the issue, we have determined that a remand limited to those defendants, based on such a technicality, would not be in the interests of judicial economy. We therefore affirm summary judgment as to all defendants but Green