SECURITIES & EXCHANGE COMMISSION, Plaintiff,

v.

COMCOA LTD., a/k/a Comcoa Ltd., Inc., and Thomas W. Berger, Defendants.

No. 94–8256–CIV.

United States District Court, S.D. Florida.

June 3, 1994.

J.B. Grossman, Gary A. Feder, Kenneth Dunn, Catherine Waddell, Ft. Lauderdale, FL, for defendants.

Charles V. Senatore, Gregory G. Little, John C. Mattimore, Eric I. Bustillo, Gary L. Goodenow, S.E.C., Miami, FL, for plaintiff.

J.B. Grossman, North Miami Beach, FL, Charles V. Senatore, Gregory G. Little, Steven E. Siff, Miami, FL, for David Levine, receiver.

### OMNIBUS ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the following motions filed by Defendants Comcoa Ltd. ("Comcoa") and Thomas W. Berger ("Berger") (collectively "the defendants") in the above-styled action, including defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 11, 1994.

The Court held a hearing on these matters on May 16 and 17, 1994, at which hearing testimony and other evidence was proffered to the Court for consideration. For the reasons stated below, the Court finds that it has subject matter jurisdiction over this action. Accordingly, the Court denies the defendants' motion to dismiss, as well as their other pending motions.

### BACKGROUND

Plaintiff Securities and Exchange Commission ("Commission") filed this action for injunctive relief against defendants Comcoa and Berger, alleging that the defendants were fraudulently offering and selling unregistered securities in violation of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), and Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder. In addition to injunctive relief, the Commission seeks an award of civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3), for Comcoa's and Berger's violations of the aforementioned securities statutes and regulations.

On May 6, 1994, the Court entered a temporary restraining order against the defendants, enjoining Comcoa and Berger from further violations of the securities laws, expediting discovery, freezing the assets of the defendants, and appointing David Levine as Receiver. Thereafter, Comcoa and Berger filed a motion to dismiss and a motion to vacate the temporary restraining order, alleging that the Commission does not have jurisdiction over this matter.

In support of their motion, Comcoa and Berger argue that their business is solely an application service to aid its clients in obtaining certain FCC licenses; hence, their activities do not constitute the offering or selling of securities. The Commission, however, claims that the defendants offer and sell "investment contracts," and thus their actions are controlled by both the Securities Act and the Exchange Act. The Court agrees.

### DISCUSSION

**1. The Securities Laws.**

■ The Securities Act and the Exchange Act are "remedial legislation requiring broad and liberal construction." *Tcherepnin v.*

*Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). Under these acts, an "investment contract" is included within the definition of a security. 15 U.S.C. § 77b(1). To determine whether a particular interest is an investment contract and, thus, a security, the Court must apply the three-pronged test pronounced by the United States Supreme Court in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Howey,* the Court defined an "investment contract" as a "contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 299, 66 S.Ct. at 1103. This definition subsumes within it three elements: first, that there is an investment of money; second, that the scheme in which the investment is made functions as a common enterprise; and third, that under the scheme, profits are derived solely from the efforts of individuals other than the investor. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 477 (5th Cir.1974).

■ In determining whether an investment contract exists, the Court should disregard form over substance, and place emphasis on the economic realities of the transaction. *Stowell v. Ted S. Finkel Inv. Servs., Inc.,* 489 F.Supp. 1209, 1223 (S.D.Fla.1980). "[T]he security standard must be a resilient standard, one which is capable of adapting to various and creative schemes devised by promoters who seek the use of the money of others. Dynamic scrutiny of investment schemes is essential to carrying out the remedial purpose of disclosure under the [s]ecurities act[s]." *Id.* With these principles in mind, and applying *Howey* to the facts of this case, the Court finds that the defendants are engaged in the offer and sale of securities.

**2. Analysis.**

■ Under the first prong of the *Howey* test, an "investment of money" means a commitment of assets in such a manner as to subject oneself to financial loss. *Stowell,* 489 F.Supp. at 1220. In the case *sub judice,* the record is undisputed that Comcoa's clients invested a minimum of $7,000.00 for each license, and that each investor may lose their entire investment if they do not act upon the licenses within eight (8) months of issuance. The record is also clear that these investors do not have the technical/communications expertise necessary for setting up the requisite communications tower or for finding a buyer, lessee, or systems operator for their licenses. Thus, the risk of financial loss is greatly enhanced.

Under the second prong, a "common enterprise" must exist. While such commonality may be horizontal or vertical, only vertical commonality is required in this district. *SEC v. United Monetary Servs., Inc.,* No. 83–8540–CIV–PAINE, 1990 WL 91812, at *6 (S.D.Fla. May 18, 1990).[1] Vertical commonality requires a finding that "the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enter. Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). In this regard, the Court accepts the Commission's position and finds that the fortunes of each investor are dependent upon the success of Comcoa in preparing, filing, and obtaining licenses for the investors, and then arranging for the lease of those licenses.[2] Moreover, the investors' realization of profits is dependent upon the efforts of third parties; i.e., the success or failure of the systems operators in marketing the license to the end-user. This dependency on third parties is greatly enhanced by the fact that the majority of investors live a great distance from where their licenses are located and lack the technical expertise to market the licenses themselves. Accordingly, the Court finds that vertical commonality exists.

---

1. A "horizontal" relationship is defined as one between the individual investor and a pool of other investors. "Vertical" commonality is essentially a one-on-one arrangement between the investor and the promoter or some other third party. *Hector v. Wiens,* 533 F.2d 429, 433 (9th Cir.1976); *SEC v. International Mining Exch., Inc.,* 515 F.Supp. 1062, 1067 (D.Colo.1981).

2. The Court addresses this finding more fully in its analysis of the third prong of the *Howey* test.

Under the last prong of the *Howey* test, the record is clear that the investors reasonably expected to realize profits from Comcoa's scheme, and that such expectation was the primary reason for the investment. *See United Hous. Found. v. Forman,* 421 U.S. 837, 852–53, 95 S.Ct. 2051, 2060–61, 44 L.Ed.2d 621 (1975). The question before the Court, then, is whether these profits were to be derived solely from the efforts of others.

Some courts that have addressed this issue have given a broad interpretation to the term "solely." *See, e.g., Turner,* 474 F.2d at 482 (finding that "solely" means "significantly").[3] In the Eleventh Circuit, however, a split of authority exists as to whether the term "solely" should be applied literally or broadly. In *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 483 (5th Cir.1974), the former Fifth Circuit appeared to adopt the broad test applied by the Ninth Circuit in *Turner.* The court in *Koscot* reasoned that "a literal application of the *Howey* test would frustrate the remedial purposes of the Act." *Id.* at 480. Subsequently, however, that same court interpreted the Supreme Court's restatement of the *Howey* test in *Forman* as requiring a strict approach to the issue. *Piambino v. Bailey,* 610 F.2d 1306, 1317 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980). The Eleventh Circuit has yet to resolve this apparent conflict.[4] Other courts in this Circuit have either followed *Koscot* or have declined to address the issue. Until the Eleventh Circuit resolves the issue, and in light of the remedial nature of the securities laws and the requirement that they be broadly construed, the Court finds persuasive the reasoning in *Koscot,* and therefore applies the *Turner* test to the facts of this case. *See*

*Seale v. Miller,* 698 F.Supp. 883, 891–92 (N.D.Ga.1988) (adhering to *Koscot* ).

Here, the post-licensing involvement of Comcoa (or rather, promises of such involvement), and the necessity of systems operators to realize any profit at all, militates in favor of a finding that the investors' profits would be derived, if at all, from the significant efforts of either Comcoa itself, or of the systems operators to whom the licenses would be leased. Indeed, as the Court previously noted, because the investors do not have the required technical expertise to market their licenses themselves, they could not possibly realize a profit from this scheme without the significant involvement of others. In this regard, the Court does not accept the defendants' contention that Comcoa does not provide post-license services for the investors. Specifically, the Court finds incredible Berger's testimony that a person would invest $7,000.00 in Comcoa's scheme without some assertion, either implied or direct, on Comcoa's part that Comcoa would aid the investor in arranging for the subsequent lease of the license obtained. Instead, the Court accepts as credible the declarations of various Comcoa investors stating that the defendants did in fact make such representations to them, including statements to the effect that Comcoa would "take care of everything."

Moreover, in the Court's view, the scheme is no less an investment contract because some participation by the investor is required; i.e., activation of the license within eight (8) months of issuance. Undeniably, the *essential* managerial efforts which affect the success or failure of the enterprise are those of others, and not of the investors. To the extent that any representations made

---

3. The Supreme Court, in discussing the *Howey* test, has acknowledged the Ninth Circuit's broad application of the third *Howey* prong in *Turner,* but has expressed no view as to the propriety of that test. *Forman,* 421 U.S. at 852 n. 16, 95 S.Ct. at 2060 n. 16.

4. In *Villeneuve v. Advanced Business Concepts Corp.,* 698 F.2d 1121, 1125 (11th Cir.1983), the three-judge panel adhered to the *Howey* test, as "reaffirmed in *Forman,* and adopted by the former Fifth Circuit in *Piambino.*" Subsequently, however, the Eleventh Circuit granted rehearing

en banc, thereby vacating the previous opinion. *Villeneuve v. Advanced Business Concepts,* 730 F.2d 1403, 1404 n. 1 (11th Cir.1984) (en banc). In affirming en banc the district court's determination that the contract at issue in that case was not a security, the Court acknowledged that the case "does not present the opportunity to determine whether the rule adopted to *Koscot* and the line of cases that followed conflicts with the requirements of *Forman.*" *Villeneuve,* 730 F.2d at 1404 n. 2. *See also Albanese v. Florida Nat'l Bank,* 823 F.2d 408, 410 n. 1 (11th Cir.1987) (declining to address the issue).

during the solicitation process or in the application service agreement itself indicate otherwise, the Court finds such representations to be "illusory and insufficient to disqualify the investment as a security." *Eberhardt v. Waters,* 901 F.2d 1578, 1581 (11th Cir.1990). Thus, the Court finds that the Commission has met the third element of the *Howey* test.

Defendants rely on *SEC v. Energy Group of America, Inc.,* 459 F.Supp. 1234 (S.D.N.Y. 1978), for the premise that what they are offering is not a security. Such reliance, however, is misplaced. In *Energy Group,* the defendant was offering participation in a lottery for oil and gas leases for a ten dollar fee. The court in *Energy Group* held that what was being offered was merely "an inducement to participate in a lottery, a game of chance," and thus was not an investment of capital for the realization of profit. *Energy Group,* 459 F.Supp. at 1239. In the case at bar, the defendants explicitly represent that their scheme is not a lottery. Moreover, this Court, on facts not unlike those in the instant case, has distinguished and refused to apply the *Energy Group* decision. *See In re U.S. Oil & Gas Litigation,* No. 83-1702-A1-CIV-HOEVELER, 1988 WL 28544, 1988 U.S.Dist. LEXIS 2217 (S.D.Fla. Feb. 8, 1988).

In *U.S. Oil,* the Court held that an application filing service for oil parcels was engaged in the offer and sale of securities. *Id.* at *5, 1988 U.S.Dist. LEXIS 2217 at *13. The Court found it significant that the investors paid $7,500.00 for their investment, were guaranteed a lease, and were told that the investment was tax deductible. Moreover, the defendant touted its expertise. *Id.* at *6, 1988 U.S.Dist. LEXIS 2217 at *18–19. These facts are very similar to Comcoa's offering; Comcoa charges $7,000.00 per investment, it touts its engineering and marketing expertise, it guarantees investors a license, it represents its investment as "tax deductible," and it expressly represents that the investment is "not a lottery." Comcoa further advises investors that the venture is IRA and Keogh-approved and is an appropriate investment for retirement funds. Hence, the Court finds that *U.S. Oil* is controlling, and *Energy Group* is inapposite.

■ The Court also rejects the defendants' reliance on the statement in their application service agreement that this is "not a solicitation for an investment." In determining whether or not Comcoa's offering constitutes a security, the Court is not bound by the operative agreement between Comcoa and its investors. *See Paulsen v. Commissioner of Internal Revenue,* 469 U.S. 131, 143, 105 S.Ct. 627, 633–34, 83 L.Ed.2d 540 (1985); *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351–53, 64 S.Ct. 120, 123–24, 88 L.Ed. 88 (1943). *See also Gordon v. Terry,* 684 F.2d 736, 742 (11th Cir.1982) (promises and representations made by promoter considered even where written instrument gave complete control of investment to investor), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983). "[T]he issue is not whether the agreements are securities, but whether the scheme of which the agreements are a part constitutes the sale or offer for sale of securities." *Cellular Eng'g, Ltd. v. O'Neill,* 118 Wash.2d 16, 25, 31, 820 P.2d 941, 946, 949 (1991). Indeed, when considering Comcoa's scheme in its entirety, the Court gives little deference, if any, to these carefully crafted "exculpatory clauses" inserted in the agreements.

### *CONCLUSION*

Based upon the foregoing considerations, the Court finds that the Comcoa transactions constitute investment contracts, hence securities, as defined by Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. Accordingly, it is hereby

ORDERED AND ADJUDGED that:

(1) Defendants' Emergency Motion to Vacate Order, or in the alternative, Modify and Clarify Order, and Request for Funds for Attorneys and Expert Witnesses, filed May 11, 1994, is DENIED.

(2) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 11, 1994, is DENIED.

(3) Defendants' Motion for Preliminary Hearing on Defendants' Motion to Dismiss, filed May 11, 1994, is DENIED AS MOOT.

(4) Defendants' Motion to Compel Receiver to Abide by the Order of This Court Dated May 6, 1994, filed May 12, 1994, is DENIED.

(5) Defendants' Petition for Reasonable Living Expenses for Defendant Thomas Berger, filed May 12, 1994, is DENIED.