795 F.2d 340
 1986-1 Trade Cases 67,156
 COASTAL NEURO-PSYCHIATRIC ASSOCIATES, P.A.; Ellis F.
Muther, M.D.; Clarence E. Ballenger, III, M.D.;
and Mack D. Jones, M.D., Appellants,
v.
ONSLOW MEMORIAL HOSPITAL, INC., Defendant,
and
Onslow County Hospital Authority, Appellee.
 No. 85-1827.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1986.
Decided June 27, 1986.
 
 Noel L. Allen (Miriam J. Baer, Barringer, Allen & Pinnex, Raleigh, N.C., on brief) and John M. Martin, Farmville, N.C. (Imelda Pate, Allen, Hooten & Hodges, P.A., Kinston, N.C., on brief), for appellants.
 Thaddeus B. Hodgdon (Hollowell & Silverstein, P.A., Raleigh, N.C., Alex Warlick, Jr., Warlick, Milsted, Dotson & Carter, Jacksonville, N.C., on brief), for appellee.
 Before RUSSELL, CHAPMAN and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Coastal Neuro-Psychiatric Associates sued Onslow County Hospital Authority, alleging that the hospital had violated the Sherman Antitrust Act, 15 U.S.C. Secs. 1 and 2. The district court granted summary judgment for Onslow County Hospital, finding that the hospital was immune from antitrust liability under the state action exemption of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). We affirm.
 
 
 2
 In their Onslow County office, Coastal's physicians provide medical services, including computerized axial tomography ("CAT Scans"). Before 1983, Coastal owned and operated the only CAT Scan equipment in Onslow County, North Carolina. In 1983, the hospital acquired its own CAT Scan equipment. Onslow County Hospital is the only hospital in the county.
 
 
 3
 The individual physicians of Coastal applied for the privilege of performing and interpreting CAT Scans on the hospital's equipment. The hospital denied the applications on the ground that its contract with in-house radiologists granted them the exclusive right to perform and interpret CAT Scans on the hospital's equipment.
 
 
 4
 Coastal alleges that the hospital's behavior constitutes an illegal tying arrangement in violation of the antitrust laws. We agree with the district court that there are no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law.
 
 
 5
 To be exempt from antitrust laws "municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.' " Town of Hallie, 105 S.Ct. at 1716, quoting City of Lafayette v. Louisiana Power and Light Co., 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978) (opinion of Brennan, J.). In Town of Hallie, the Court found that Wisconsin statutes authorized cities to provide sewage services and to determine the areas to be served. The City of Eau Claire supplied sewage treatment services to neighboring unincorporated townships only if the landowners agreed to use the city's sewage collection and transportation services. The Court found it "clear that anticompetitive effects logically would result from this broad authority to regulate," and held that the state action exemption precluded antitrust liability. Town of Hallie, 105 S.Ct. at 1718.
 
 
 6
 North Carolina statutes authorizing municipalities to construct, operate and maintain hospitals likewise contemplate anticompetitive effects. See N.C.Gen.Stat. Sec. 131E-5. See also 131E-7(a)(6) (municipality may establish fee schedule); Sec. 131E-8(a) (hospital must provide services to indigents). Section 131E-85(a) gives hospitals the power to determine which physicians may practice in them: "Such determinations should be based upon the applicant's education, training, experience, demonstrated competence and ability, and judgment and character of the applicant, and the reasonable objectives and regulations of the hospital, including, but not limited to appropriate utilization of hospital facilities, in which privileges are sought." The statute further states that nothing herein "shall be deemed to mandate hospitals to grant or deny to any such individuals or others privileges to practice in hospitals."
 
 
 7
 Town of Hallie requires that local anticompetitive conduct be "a foreseeable result" of the state enactment for antitrust exemption to apply. Local restrictions on staff privileges under this state statute may reduce the supply or variety of medical services to the surrounding community. The North Carolina legislature must have foreseen this anticompetitive consequence and decided that the regulatory benefits conferred by the statute simply outweighed it.
 
 
 8
 It is clear the local hospital board acted pursuant to the state statute. The minutes of the hospital's finance and executive committee meeting in January, 1984 enumerate the hospital's reasons for granting an exclusive contract to the in-house radiologists. The board believed that the exclusive contract would lead to "greater control and standardization of procedures resulting in lower operating costs." The committee sought "better scheduling in the use of facilities and support staff," and improved teamwork and work routines as physicians, technicians and nurses worked together more frequently. The board also anticipated "reduced machinery breakdowns and maintenance problems as a result of fewer equipment users." Unlike a private party, a municipality is presumed to act "in the public interest," Town of Hallie, 105 S.Ct. at 1720. We see no evidence that the action of the public body in this case was other than public spirited.
 
 
 9
 The Coastal physicians contend that they are entitled to a hearing to determine the quality of their services and the benefit the community would derive therefrom. We do not believe that Sec. 131E-85(a) requires a hearing if the hospital's decision to limit the number of physicians using the equipment is based upon the reasonable objectives required by the statute. See Claycomb v. HCA-Raleigh Community Hospital, 76 N.C.App. 382, 333 S.E.2d 333, 336 (1985). The statute does not require that all qualified physicians be granted privileges to practice in hospitals. In enacting the statute, the North Carolina legislature appeared to anticipate that the limited capacity of hospital facilities and the need to monitor sophisticated equipment might necessitate some restrictions upon physician access. It would impose an undue burden upon a hospital's resources to require a hearing on each applicant's qualifications once the hospital has made a considered judgment under the statute to deny further staff privilege requests.
 
 
 10
 In restricting privileges to its in-house radiologists, Onslow County Hospital has complied with the statute. If it has engaged in anticompetitive activity, it has done so under a law passed to promote greater hospital self governance. The hospital is therefore immune from antitrust liability.
 
 
 11
 The restriction of qualified physicians from reading CAT Scans at Onslow County Hospital may or may not be a salutary result. It is clear, however, from Town of Hallie that the choice is that of North Carolina and its local hospital boards of governance. Town of Hallie restricts the power of federal courts to overturn that choice under the competitive principles embodied in the Sherman Act.
 
 
 12
 Coastal has alleged that the hospital's action also violated Article I, Section 34 of the North Carolina Constitution. When it granted summary judgment on the antitrust claim, the district court correctly dismissed the pendent state law claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Terry's Floor Fashions v. Burlington Industries, Inc., 763 F.2d 604, 615 (4th Cir.1985).
 
 
 13
 For the foregoing reasons, the decision of the district court is
 
 
 14
 AFFIRMED.