RIVANNA TRAWLERS UNLIMITED, a Virginia general partnership; Bruce H. Cabell; Waldemar G. Dahl; Joseph W. May; Charles W. Miller; John R. Morris, Jr.; Mary M. Riviere; Colin Rosse; Eleanor K. Spaar; Phil Speasmaker; Thomas L. Schildwachter; Wesley A. Volk; Joan Volk; Benjamin H. Word, Jr.; John K. Youel, Jr.; Donald T. Zimmerman, Plaintiffs–Appellants.

**and**

Charles R. Borchardt; David F. Cooke; John R. Morris, III; GMS Partnership; Joe H. Gieck; Frank C. McCue, III, Plaintiffs,

**v.**

THOMPSON TRAWLERS, INC.; T–Craft Boat Company; Thompson Management, Inc.; Beeline Seafoods, Inc.; Worrell Newspapers, Inc.; Vessel Sales Corporation; Thomas E. Worrell, Jr.; Walter B. Salley; Walter B. Salley, Jr.; Salley, Weissinger & Co.; Joseph C. Palumbo, Defendants–Appellees.

No. 87–2516.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1988.

Decided Feb. 22, 1988.

Before POWELL, Associate Justice (Retired); United States Supreme Court, sitting by designation; ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

POWELL, Associate Justice:

The dispositive issue presented in this case is whether the district court, 650 F.Supp. 1378 correctly concluded that appellants' general partnership interests in Rivanna Trawlers Unlimited are not securities within the meaning of the federal securities laws. We hold that these interests are not securities, and affirm.

The appellate record indicates that the Virginia general partnership, Rivanna Trawlers Unlimited ("RTU"), was formed in August 1982 when twenty-three parties executed an agreement for the purpose of forming a general partnership, "which will acquire, own, lease and operate multi-purpose fishing vessels and otherwise engage in the commercial fishing business...." (App. at 1535). At some point, not disclosed by the record, Joseph W. May, M.D. also joined the partnership.[1] On August 30, 1982 RTU purchased four fishing boats and entered into several agreements for their management and maintenance with Thompson Management, Inc. By the spring of 1983 the partners were expressing concern over the partnership's operations and they were considering management alternatives. Operation of the fishing boats had not been meeting the partners' financial expectations. The partners subsequently replaced RTU's external managers[2] twice and removed RTU's original managing partner Walter B. Salley, Sr., who was a general partner of GMS, and replaced him with a managing partnership committee.

Edward B. Lowry (Brian J. Donato; Robert W. Jackson; Michie, Hamlett, Donato & Lowry, Charlottesville, Va., on brief), for plaintiffs-appellants.

Stanley Efrom Preiser (Preiser Law Offices, Charleston, W. Va., on brief); Charles F. Midkiff (Midkiff & Associates, P.C.; Richmond, Va., Crady Swisher, III; Edward R. Slaughter, Jr.; Slaughter & Redinger; John W. Zunka; Taylor & Zunka, Charlottesville, Va., on brief), for defendants-appellees.

1. Appellees' brief states that there were 25 partners in RTU. The Partnership Agreement exhibited at pages 1535–46 of the Joint Appendix contains the names of only 23 partners, including the GMS partnership. The Mutual Release Agreement signed by all the partners contains only 24 partners (Joseph May's name was added). It may be that appellees have included the individual partners of the GMS partnership in the total number of partners in the RTU partnership. This discrepancy is immaterial to the outcome of the case.

2. Use of the phrase "external managers" refers to the employment of individuals who were not necessarily members of the partnership to manage and maintain the partnership's fishing boats. "Internal manager" or "managing partner" refers to the partner or partners responsible for carrying out policy and management decisions made by the partners.

In August 1984 RTU and a number of its partners filed a complaint against Thompson Trawlers, Inc., Thompson Management, Inc. and various other companies and individuals, including Walter B. Salley, Sr. and Walter B. Salley, Jr., in the United States District Court for the Western District of Virginia. These plaintiffs alleged that their interests in the general partnership were "investment contracts" as defined in the federal securities laws, and that appellees had violated these laws. Appellants also alleged various violations of Virginia state law. An amended complaint was filed in November 1984 and a second amended complaint was filed in August 1985. Jurisdiction was asserted pursuant to § 22 of the Securities Act of 1933, § 27 of the Securities Act of 1934, and Rule 10b–5. There was no diversity of citizenship, and therefore pendent jurisdiction was asserted as a basis for the court's jurisdiction over the Virginia state law claims. In response to the second amended complaint, appellees filed motions to dismiss on the ground, among others, that the plaintiffs had failed to state a cause of action under the federal securities laws. Appellees argued that the plaintiffs' general partnership interests were not securities. Appellees also alleged that a "Mutual Release Agreement," signed by all the plaintiffs in October 1983, released the appellees from all claims asserted in the complaints.

The district court treated the motions to dismiss as motions for summary judgment. It found that the plaintiffs' general partnership interests were not securities and therefore it dismissed their federal claims.[3] Noting that its jurisdiction was premised on the federal securities law claims, the district court declined to consider the pendent claims. All but two of the plaintiffs appealed.

## I

■ The language of the district court, in dismissing the appellants' complaint, was somewhat ambiguous. Therefore we consider first the legal basis for the action taken by the district court. The Supreme Court has held that when the contested basis for jurisdiction is also an element of the plaintiff's federal claim, the claim should not be dismissed for lack of subject matter jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). When the claim is neither immaterial nor insubstantial, the proper course of action is for the district court to accept jurisdiction and address the objection as an attack on the merits. *Id.* Whether a particular interest is a "security" is both a question of subject matter jurisdiction and an element of appellants' asserted claims under the federal securities laws. *See Futura Development Corp. v. Centex Corp.,* 761 F.2d 33, 38 (1st Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 121 (1985); *AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148, 152–53 (2d Cir.1984); *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Moreover, the federal claims asserted by appellants are neither immaterial nor insubstantial. Despite its technically incorrect statement that "the case must be dismissed for want of jurisdiction," the court considered the security issue as though it were the basis of a motion to dismiss for failure to state a claim that had been converted into a motion for summary judgment. Therefore, we hold that the district court properly accepted jurisdiction over these claims and considered them on the merits.

## II

### A

■ In a motion for summary judgment, the moving party is entitled to summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d

---

**3.** In an alternative holding, the district court found that the "Mutual Release Agreement" signed by the plaintiffs was dispositive of all plaintiffs' asserted claims.

202 (1986). The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* 106 S.Ct. at 2514. Appellants contend that issues of material fact exist as to whether their general partnership interests fall within the scope of the term "investment contract" as used in section 2(1) of the 1933 Securities Act, 15 U.S.C. § 77b(1), and in section 3(a)(10) of the 1934 Securities Exchange Act, 15 U.S.C. § 78c(a)(10).

## B

█ We address first appellants' claim that their interests in the RTU partnership were investment contracts, and therefore were securities within the meaning of the federal securities laws. The Supreme Court has defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...." *Securities & Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). The critical issue on this appeal is whether appellants' general partnership interests in RTU meet the third prong of the *Howey* test—that is, the expectation of profits derived solely from the efforts of others.[4] General partner-

ships ordinarily are not considered investment contracts because they grant partners—the investors—control over significant decisions of the enterprise. *Deutsch Energy Co. v. Mazur,* 813 F.2d 1567, 1570 (9th Cir.1987); *Goodwin v. Elkins & Co.,* 730 F.2d 99, 102–03 (3d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *Odom v. Slavik,* 703 F.2d 212, 215 (6th Cir.1983); *Gordon v. Terry,* 684 F.2d 736, 741 (11th Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983); *Williamson v. Tucker,* 645 F.2d 404, 422 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In *Williamson,* a leading case, the Fifth Circuit identified a narrow exception to the strong presumption that a general partnership is not a security. The court stated that:

> ... a partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him *or otherwise* exercise ultimate control.

*Id.* at 424 (emphasis added).[5] Only when this degree of dependence by the partners exists is there an investment contract. *Id.* at 423. Moreover, the court emphasized that "[t]he delegation of rights and duties —standing alone—does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test." *Id.* In other words, the mere choice by a

---

4. In *SEC v. Glenn W. Turner Enters.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973) the Ninth Circuit held that the term "solely" should not be given a literal construction. A more liberal interpretation of the term solely, as used in *Howey,* has been adopted by eight additional circuits. *See, e.g., SEC v. Professional Assocs.,* 731 F.2d 349, 357 (6th Cir.1984); *Goodwin v. Elkins & Co.,* 730 F.2d 99, 103 (3d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *SEC v. Aqua–Sonic Prods. Corp.,* 687 F.2d 577, 582 (2d Cir.), *cert. denied,* 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982); *Kim v. Cochenour,* 687 F.2d 210, 213 n. 7 (7th Cir.1982); *Baurer v. Planning Group Inc.,* 669 F.2d 770, 779 (D.C.Cir. 1981); *Williamson v. Tucker,* 645 F.2d 404, 418 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1040 n. 3 (10th Cir.1980); *Fargo Partners v. Dain Corp.,* 540 F.2d 912, 914–15 (8th Cir.1976). In light of

the Supreme Court's statements that economic reality is to govern over form in determining what is a "security," we agree that the term solely—used in *Howey*—must not be given a literal construction in all circumstances. *See, e.g., International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975).

5. Appellants argue that *Williamson* would characterize a general partnership interest as a security when the partners cannot replace a particular manager with *themselves.* This is incorrect. The court in *Williamson* was careful to qualify its language by stating that a manager is irreplaceable only when the partners are, "incapable, within reasonable limits, of finding a replacement manager." 645 F.2d at 425.

partner to remain passive is not sufficient to create a security interest. The critical inquiry is, "whether the powers possessed by the [general partners] in the [partnership agreement] were so significant that, regardless of the degree to which such powers were exercised, the investments could not have been premised on a reasonable expectation of profits to be derived from the management efforts of others." *Id.* at 419.

■■■ We agree with the Fifth Circuit, as well as the other circuits that appear to have embraced the *Williamson* reasoning,[6] that only under certain limited circumstances can an investor's general partnership interest be characterized as an investment contract. A court must examine the partnership agreement and circumstances of a particular partnership to determine the reality of the contractual rights of the general partners. When, however, a partnership agreement allocates powers to the general partners that are specific and unambiguous, and when those powers are sufficient to allow the general partners to exercise ultimate control, as a majority, over the partnership and its business, then the presumption that the general partnership is not a security can only be rebutted by evidence that it is not possible for the partners to exercise those powers.[7] As the district court stated, "[e]ven when general partners do not individually have decisive control over major decisions, they do have the sort of influence which generally provides them with access to important information and protection against a dependence on others." (App. at 318). In a case of this kind, it also is important to bear in mind that Congress, in enacting the securities laws, did not intend to provide a federal remedy for all common law fraud. *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982).

## C

■■ The RTU Partnership Agreement confers broad authority on the partners to manage and control the business. It provides that the partnership can be dissolved by a concurrence of 60% in interest of the partners. (App. at 1536). It also states that, "[c]oncurrence of sixty percent (60%) in interest of the partners should be required with respect to policy and management decisions on [sic] the partnership business...." (App. at 1538). Policy and management decisions include: (i) the power to sell and convey, lease, mortgage, or encumber partnership assets; (ii) the power to borrow or lend sums on behalf of the partnership when in excess of $5000; (iii) the power to hire agents to manage or operate the business of the partnership; (iv) and the power to appoint a successor to the managing partner named in the agreement. *Id.* Moreover, at all times, each partner has reasonable access to the partnership's books of account and has the right to demand an audit of the partnership. (App. at 1540). Unanimous consent of the partners is required to transfer legal ownership of partnership interests, *id.*, and additional partners can be added only with the unanimous consent of the partners.

---

6. *See, e.g., Deutsch Energy Co. v. Mazur*, 813 F.2d 1567 (9th Cir.1987); *Odom v. Slavik*, 703 F.2d 212 (6th Cir.1983); *Gordon v. Terry*, 684 F.2d 736 (11th Cir.1982), *cert. denied*, 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983). *But see, Goodwin v. Elkins & Co.*, 730 F.2d 99, 103–04 (3d Cir.) (Opinion of Garth, J.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984). Judge Garth, in an interesting opinion, concluded that in view of the powers expressly conferred on general partners by New Jersey law, he would hold that a partnership interest could not be considered a security as a matter of law. In view of the broad powers conferred by the RTU partnership agreement, we have no occasion to consider the effect of Virginia law. *See infra* note 8.

7. If and to the extent that *Williamson* and other cases may be read to require a court to look to the actual knowledge and business expertise of *each* partner in order to assess his or her individual ability intelligently to exercise the power of a general partner, we do not agree. Such an inquiry would undercut the strong presumption that an interest in a *general* partnership is not a security. It also would unduly broaden the scope of the Supreme Court's instruction that courts must examine the economic reality of partnership interests. *See infra* note 10. We note that no such specific argument is made in this case. Appellants' complaint and briefs properly speak only in terms of the rights and authority of the partners as a group.

(App. at 1543). Finally, unanimous consent of the partnership also is required to distribute profits other than in proportion to the partners' respective interests. (App. at 1539).[8]

■ As the district court found, the express powers granted to the partners are sufficient, on their face, to give them the authority to manage their investments. Normally, such authority renders unnecessary the protection of the federal securities laws. The Eleventh Circuit has stated that, "[a]n investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir.1982), *cert. denied*, 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983). In this case, the partners not only had the authority under the agreement to manage the business, they exercised this authority and demonstrated that they were not dependent on the irreplaceable skills of others.[9] Members of the partnership negotiated with external management groups, inspected the boats on behalf of the partnership, and reviewed partnership insurance material and financial information. Significantly, on two separate occasions the external managers were replaced. Moreover, as previously mentioned, by vote of the partners, one of the promoters, Walter Salley, Sr., was removed as managing partner of RTU and replaced with a management committee of partners. (App. at 1570). Partners also participated in settlement discussions.[10]

■ The real gravamen of appellants' complaint lies in common law fraud. As previously mentioned, the securities laws were not intended to be a substitute for state fraud actions. We affirm the district court's finding that appellants' partnership interests are not securities within the meaning of the Securities Act of 1933 or the Securities and Exchange Act of 1934.[11]

8. In addition to the terms of the partnership agreement, Virginia law provides that, subject to any agreement between the parties, all partners have equal rights in the management and conduct of the partnership, Va.Code Ann. § 50–18(e) (1986); no persons can become a member of a partnership without the consent of all partners; *id.* at § 50–18(g); and that no act in contravention of any agreement between the partners may be done rightfully without consent of all the partners, *id.* at § 50–18(h). Moreover, section 50–19 of the Virginia Code provides that "every partner shall at all times have access to and may inspect and copy any of [the partnership's books]," and section 50–24 of the Virginia Code provides that included among the property rights of a partner are, "his right to participate in the management." *See supra* note 6.

9. This is not a case like *SEC v. W.J. Howey Co.* where the, "individual development of the plots of land that [were] offered and sold would seldom be economically feasible due to their small size," and therefore investors were, in reality, unable to exercise individual management and control over their plots of land. 328 U.S. at 300, 66 S.Ct. at 1103. The general partners of RTU all had a realistic opportunity to manage, control and supervise the operation of the partnership through the exercise of substantial partnership powers. In fact, the record indicates that many of the partners, to a varying extent, have done just that. *See, e.g.,* App. at 509–514, 1316–17, 1553–54, 1555, 1564–65, 1570 for examples of partner participation.

10. The fact that some of the general partners may have remained passive or lacked financial sophistication or business expertise does not affect the result. General partners who are capable of exercising significant managerial powers cannot convert their partnership interests into a security merely by remaining passive. *See supra* p. 240–41. Moreover, members of a general partnership who lack financial sophistication or business expertise nevertheless may exercise intelligently the powers conferred on them by the partnership agreement and state law. They are entitled to receive financial reports and have the right to inspect and obtain copies of partnership books and records. *See supra* note 8. To the extent a partner needs advice or assistance in the exercise of his powers, he is of course free to consult with more knowledgeable partners or third persons, or to employ accountants and lawyers. In a word, a general partner is not dependent only on the degree of his own business sophistication in order to exercise intelligently his partnership powers.

11. Appellants argue that because the court limited discovery on the issue of whether their interests were securities, they could not address such questions as to what representations were made to them with respect to their expected level of involvement, the character of their investment, and the expertise of the managers. Therefore, they argue it was improper to grant summary judgment based on the present record. This argument is not persuasive. The representations made to the appellants about their invest-

### III

■ The final issue we address [12] is whether the district court intended to exercise pendent jurisdiction over the state law claims and dismissed them on their merits. At first glance, because of its alternative "finding" that, "the release executed by the parties is dispositive of all the substantive claims raised by the parties," (App. at 327) the district court's intention is not clear. Appellants assert that, "[h]aving determined that it lacked subject matter jurisdiction over the federal claims and having declined to exercise pendent jurisdiction over the state law claims, the District Court erred, thereafter, in deciding the validity and enforceability of the Release." Brief of Appellants at 26. As previously discussed, it would have been improper for the district court to dismiss the federal securities claims on the basis of lack of subject matter jurisdiction.[13] The court had jurisdiction to decide, as it did, the federal securities law claims against the appellants. The consequence of its jurisdiction over these claims is that it then had to exercise its discretion to decide whether to address the pendent state law claims. The Supreme Court has stated, however, that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Coastal Neuro–Psychiatric Associates, P.A. v. Onslow Memorial Hospital, Inc.*, 795 F.2d 340, 342 (4th Cir.1986) (holding that when district court granted summary judgment on the federal claim, it correctly dismissed the pendent state law claim). This is not a case where the state claims are so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. We interpret the district court's concluding statement that "it is unnecessary to consider the pendent claims" (App. at 327) as meaning it declined to exercise jurisdiction over those claims. Therefore, despite the court's *obiter dictum* concerning the validity of the release with respect to "*all* the substantive claims raised by the parties," (emphasis added) we find that its dismissal of the state law claims was not a dismissal on the merits.

### IV

The decision of the district court granting summary judgment on the federal claims and dismissing the state law claims is—

AFFIRMED.

ment and the expertise of the managers were within the personal knowledge of those appellants. No discovery was necessary to enable them to submit such facts to the court in the form of affidavits or copies of any written material sent to the appellants. Indeed, in the affidavits submitted by each appellant, it was generally alleged that the Salleys represented that the success of the venture was dependent upon the unique and special skills possessed by others. It is clear, however, that this language merely meant that none of the appellants was expected personally to run a commercial fishing operation. It did not mean that the people hired by RTU were irreplaceable or uniquely capable of making the business succeed. Moreover, as stated in the text above, the partnership agreement signed by each partner explicitly vested full authority and control of the business in the partners. We find that appellants were not prejudiced in the presentation of their case by the district court's limitation of discovery.

**12.** Because our holding with respect to the proper characterization of appellants' general partnership interests is dispositive of the court's dismissal of the federal claims, it is unnecessary to consider the validity of the Mutual Release Agreement.

**13.** *See supra* p. 239.